IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————————————

No. 13-4672

———————————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM MAURICE JOHNSON,

Defendant-Appellant.

———————————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

———————————————————————

BRIEF ON BEHALF OF APPELLANT

———————————————————————

Respectfully submitted,

Michael N. Loebl
FULCHER HAGLER LLP
One 10th Street, Suite 700
Augusta, GA 30901
Phone:  (706) 724-0171

# TABLE OF CONTENTS

Page

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION..........1

STATEMENT OF ISSUES PRESENTED...................................1

STATEMENT OF THE CASE..........................................1

    Nature of case ...........................................1

    Course of Proceedings Below and
    District Court's Disposition............................2

    Statement of Facts......................................4

SUMMARY OF THE ARGUMENT.......................................10

ARGUMENT.....................................................11

    I.   Did the district court err in failing to afford
         Appellant Johnson an opportunity to allocate?........11

    II.  Did the district court err when it received
         evidence unrelated to the allegations set forth in
         the Petition on Supervised Release?..................17

    III. Did the district court procedurally err in
         sentencing Appellant Johnson?.......................21

CONCLUSION...................................................25

ORAL ARGUMENT................................................26

CERTIFICATE OF COMPLIANCE.....................................27

CERTIFICATE OF SERVICE.......................................28

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

<u>Gagnon v. Scarpelli</u>,
411 U.S. 778, 93. S. Ct. 1756 (1973)............................18

<u>Green v. United States</u>,
365 U.S. 301 (1961).........................................13

<u>Morrissey v. Brewer</u>,
408 U.S. 471, 92 S. Ct. 2593 (1972)..........................18

<u>United States v. Chatelain</u>,
360 F.3d 114 (2d Cir. 2004).................................18

<u>United States v. Cole</u>,
27 F.3d 996 (4th Cir. 1994)........................12, 14, 15, 16

<u>United States v. Copley</u>,
978 F.2d 829 (4th Cir. 1992)................................17

<u>United States v. Crudup</u>,
461 F.3d 433 (4th Cir. 2006)............................21, 22

<u>United States v. Curbelo</u>,
343 F.3d 273 (4th Cir. 2003)................................20

<u>United States v. Davis</u>,
53 F.3d 638 (4th Cir. 1995).................................11

<u>United States v. Doswell</u>,
670 F.3d 526 (4th Cir. 2012)............................17, 20

<u>United States v. Echegollen-Barrueta</u>,
195 F.3d 786 (5th Cir. 1990)................................12

<u>United States v. Lewis</u>,
424 F.3d 239 (2d Cir. 2005).................................21

<u>United States v. Magwood</u>,
445 F.3d 826 (5th Cir. 2006)................................12

<u>United States v. Moore</u>,
666 F.3d 313 (4th Cir. 2012)................................17

<u>United States v. Muhammad</u>,
478 F.3d 247 (4th Cir. 2007)......................11, 14, 15, 16

United States v. Olano,
507 U.S. 725, 113 S. Ct. 1770 (1993)........................11, 16

United States v. Pregent,
190 F.3d 279 (4th Cir. 1999)...................................17

United States v. Steinert,
470 F. Supp. 2d 627 (E.D. Va. 2007)...................12, 14, 16

United States v. Thompson,
595 F.3d 544 (4th Cir. 2009).......................21, 22, 23, 24

**<u>Statutes and Rules</u>**

18 U.S.C. § 3231..............................................1

18 U.S.C. § 3553.........................9, 11, 22, 23, 25

18 U.S.C. § 3583.........................................17, 22

18 U.S.C. § 3605..............................................1

18 U.S.C. § 3742..............................................1

21 U.S.C. § 846..............................................2

28 U.S.C. § 1291.............................................1

Fed. R. App. P. 32..........................................27

Fed. R. App. P. 34..........................................26

Fed. R. Crim. P. 32.........................................12

Fed. R. Crim. P. 32.1...........................12, 13, 14, 18

Fed. R. Crim. P. 52.........................................11

Fourth Circuit Local Rule 34................................26

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court possessed jurisdiction pursuant to 18 U.S.C. §§ 3231 & 3605, and entered final judgment on September 9, 2013.  Appellant timely filed his notice of appeal on September 6, 2013.  (JA 113-14.)  Jurisdiction in this Court is based on 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF ISSUES PRESENTED

I.   Did the district court err in failing to afford Appellant an opportunity to allocute?

II.  Did the district court err when it received evidence unrelated to the allegations set forth in the Petition on Supervised Release?

III. Did the district court procedurally err in sentencing Appellant?

## STATEMENT OF THE CASE

Nature of Case

This appeal concerns the district court's revocation of supervised release, requiring Defendant William Maurice Johnson to serve a term of nine months imprisonment as a consequence of the court's finding that Johnson committed four Grade C violations of his previously imposed conditions.  At the time of the final supervised release hearing in late August 2013, Johnson had approximately 2.5 years of supervised release yet to serve; when the district court revoked Johnson's term of supervised release and sentenced Johnson to nine months imprisonment, it

1

ordered the termination of supervised release upon Johnson's release from imprisonment.

Course of Proceedings Below and District Court's Disposition

The record of Johnson's underlying criminal case, which originated in a different district court than the one which ultimately revoked Johnson's term of supervised release, dates back more than a decade.  Much of the prior proceedings are, at most, only remotely relevant to the instant proceeding and, fortunately, can be covered in abbreviated fashion.

On March 9, 2001, Johnson was sentenced to 121 months imprisonment and five years supervised release following his conviction by guilty plea in the United States District Court for the Eastern District of Virginia to conspiracy to distribute fifty grams or more of "crack" cocaine in violation of 21 U.S.C. § 846.  (JA 7-9.)  In May 2008, the district court reduced Johnson's sentence to time served.  (JA 21.)  The district court subsequently found technical violations of Johnson's supervised release conditions on the following several occasions:  March 11, 2009; June 9, 2009; October 9, 2009; September 3, 2009; and September 2, 2011.  (JA 22-29, 108, 77, 85-86.)  At the supervised release revocation hearing conducted on September 2, 2011, the Honorable T.S. Ellis, III, United States District Court Judge for the Eastern District of Virginia, sentenced Johnson to five months incarceration followed by three years supervised release.  (JA 28, 108, 79.)  Of note, Judge Ellis also imposed an

2

additional special condition of supervised release, requiring Johnson to submit to GPS electronic monitoring. (JA 29, 108.)

The District of Maryland assumed responsibilities for supervising Johnson in early March 2012, and a Transfer of Jurisdiction was docketed in that Court on May 21, 2012. (JA 30, 105, 108, 86.) Johnson subsequently relocated back to Virginia, and the Eastern District of Virginia began "courtesy" supervision of Johnson in or about March 2013. (JA 105, 108, 87.) Johnson's supervision was not formally transferred back to the Eastern District of Virginia.

In early May 2013, the Honorable Peter J. Messitte, Senior United States District Judge for the District of Maryland, approved a Petition on Supervised Release, which charged Johnson with five separate violations. (JA 111-12.) Johnson was arrested and made his initial appearance on the allegations in early June 2013. The assigned U.S. Magistrate Judge conducted a detention hearing and declined the Government's request for detention pending resolution of the allegations. (JA 52.) Johnson appeared for the final revocation hearing before Judge Messitte on August 29, 2013. At the conclusion of the hearing, Judge Messitte ordered Johnson to nine months incarceration, and further ordered the termination of any additional term of supervised release upon Johnson's release from confinement. (JA 91-94.) Appointed counsel timely appealed. (JA 113.)

3

Statement of Facts

The Petition on Supervised Release filed in the U.S. District Court for the District of Maryland charged Johnson with the following five violations of previously imposed conditions: (1) failing to reside at an approved home plan in violation of Standard Condition #6, which required Johnson to notify the Probation Officer ten days prior to any change of address; (2) failing to obtain employment or provide verification of attempting to obtain employment in violation of Standard Condition #5; (3) failing to obtain stable living arrangements such that the Probation Officer was precluded from visiting Johnson in violation of Standard Condition #10; (4) failing to follow the instructions of his supervising Probation Officer concerning the charging of the GPS electronic monitoring device in violation of Standard Condition #3; and (5) failing to submit to electronic monitoring via GPS in violation of the Additional Condition imposed by Judge Ellis in September 2011. (JA 111-12.)

Johnson admitted the two GPS-related violations—concerning numbers (4) and (5) of the preceding paragraph—and denied the remaining charged violations. (JA 58-59, 53.) The Government dismissed the second charge alleging Johnson failed to provide verification of his attempts to obtain employment in violation of Standard Condition #5. (JA 57.) The district court then heard evidence on the whether Johnson failed to reside at an approved home plan and whether he failed to obtain stable living

4

arrangements in violation of Standard Conditions #6 and #10, respectively.

In this regard, Senior U.S. Probation Officer Jeffrey Smihal from the Eastern District of Virginia was sworn and testified on behalf of the Government. Smihal explained that Johnson had initially requested permission to reside in Alexandria, Virginia with one Jeanette Singleton, the mother of his infant child. (JA 66-67.) That request was denied on the basis that Ms. Singleton had a felony record. (JA 67.) Johnson then made a request to reside at the home of his cousin, who also lived in Alexandria. (JA 67.) That request was approved. (JA 67.) Johnson was present at his cousin's residence when Smihal conducted an initial home inspection and approved Johnson's request for permission to reside there; however, when Smihal subsequently made a surprise visit to the residence, he was advised that Johnson was not present. (JA 68.) Johnson was not on a curfew, so this was not problematic. (JA 68.) But when Smihal asked to be shown where Johnson was staying, Johnson's cousin took Smihal to "an area in the upstairs hallway with a mattress and two garbage bags" and no other belongings. (JA 68.)

Smihal also testified to his review of the GPS tracking data over a period of approximately one month. (JA 68, 71.) Smihal's office placed Johnson on GPS monitoring on March 21, 2013. (JA 68.) At that time, he was at the approved residence for twelve or thirteen hours, although he also spent time at the disallowed

5

residence of his child's mother.  (JA 68.)  Smihal testified to a
pattern of Johnson spending "less and less time at the approved
residence, and more and more time" at several other residences,
including but not exclusively at the residence of his child's
mother.  (JA 67-68.)  Because Johnson was "never really at one
spot for a whole period of time," Smihal had difficulty visiting
him at his residence as envisioned in Standard Condition #10.
(JA 69.)  Smihal further testified that the tracker on Johnson's
GPS device "died several times," causing Probation to "put a new
tracker on [Johnson]."  (JA 69.)

On cross examination, Smihal acknowledged that Johnson
fathered a one-year old child who was then living with the
child's mother at the residence which Probation declined to
approve.  (JA 71.)  Visiting his child was not in violation of
any condition imposed on Johnson.  (JA 71.)  Smihal also conceded
that he found no contraband during his inspection of the
residence where Johnson was supposed to be residing, nor was he
aware of any information that Johnson had been charged with any
crime during the time he was on supervision.  (JA 72.)

No other witnesses testified, and the district court heard
argument from counsel for both parties concerning the
significance of Smihal's testimony.  (JA 72-76.)  Judge Messitte—
who had not presided over Johnson's trial or any of the prior
violations of Johnson's conditions of supervised release—briefly
queried counsel on when Johnson had been released from custody

6

following his initial sentencing and Johnson's subsequent history of supervised release. (JA 76-78.) Smihal acknowledged that the prior violations were for "a lot of minor conditions that would add up over a period of time." (JA 77.)

Of some note, though, the district court received testimony from Smihal and argument from the Government's counsel concerning an incident which occurred after the filing of the Petition on Supervised Release but which is summarized in a Status Report filed on August 9, 2013, approximately three weeks prior to the final hearing. (JA 77-79, 88, 36.) In brief, when Mr. Johnson left the courthouse following a hearing on that date, Smihal observed Johnson "getting into a vehicle unknown to the probation officer." (JA 36.) Smihal's investigation determined that the vehicle was registered to a convicted felon, and that, according to GPS data, Johnson had spent time at this person's residence. (JA 36.) At the final revocation hearing, Johnson's counsel objected to this evidence as "not part of the violations" with which Johnson was charged. (JA 78.) The Court continued to hear evidence on the issue, even though the prosecuting AUSA made clear her desire to "focus on just the historical violations that have underlie [sic] the five different periods of incarceration of Mr. Johnson." (JA 79.) Even though Probation Officer Ginger Miller of the District of Maryland—who submitted the August 9 Status Report—had not been sworn, the district court inquired of her about the circumstances of the incident. (JA 79.) Johnson's

7

counsel continued to resist any inquiry into the matter, but the district judge instructed counsel to "[h]ave a seat." (JA 80.) When Johnson's attorney was given the opportunity to speak, he informed the court that the person driving the vehicle which Johnson had been seen entering following the prior court hearing was not the person to whom the vehicle was registered. (JA 80.) In any case, the court heard additional argument on the subject prior to rendering its sentence, with the Government's counsel emphasizing the incident in the same breath with which she argued for "a substantial period of incarceration." (JA 88-89.)

Prior to imposition of sentence, the court found violations on both of the charges to which Johnson admitted as well as both of the remaining charges which Johnson challenged. (JA 82-83.) At the same time, the court expressed hesitation in finding Johnson violated both of the challenged conditions, recognizing the "problematic" nature of the blanket prohibition disallowing Johnson from spending nights at the home of his infant child. (JA 82.) Nonetheless, the Court ultimately found a total of four Grade C violations. (JA 83.)

Before imposing sentence, the court heard argument from counsel as to the appropriate disposition. Indicating that the Guidelines range was six to twelve months confinement, the Government's counsel argued for a "high end" sentence of ten to twelve months imprisonment. (JA 85.) Johnson's counsel, in turn, argued for a fine and community service. (JA 91.) At this

8

point in the hearing, the court posed the following question to

Johnson:

> THE COURT:  Mr. Johnson, I'm sure you have faced a
> dozen or more judges in the past and told them it would
> never happen again.  Is there something new or
> different that you want to tell me?
>
> THE DEFENDANT:  No, sir.

(JA 91.)

The court then observed that Johnson "doesn't comply with

supervised release" and floated the suggestion of imposing "a

significant jail term now and end[ing] his supervised release."

(JA 91.)  The Government embraced that suggestion, while

Johnson's counsel reminded the court of "all the time [Johnson

has] already served" for his past violations and contended that a

period of thirty to sixty days confinement was more appropriate.

(JA 92.)  The court rejected that request, noting that he

"want[ed] a very strong message sent, if not for this defendant,

then to anybody else that you can't do this with impunity."  (JA

93.)  Noting that nine months imprisonment fell "right in the

middle of the recommended range," the court imposed nine months

imprisonment with termination of supervised release upon

Johnson's release from confinement.  (JA 93-94.)  At no point

during the hearing did the court reference 18 U.S.C. § 3553(a)

nor, with the possible exception of deterrence, did the court at

any point consider the sentencing factors set forth in that

statute.

9

## SUMMARY OF THE ARGUMENT

In this appeal, Johnson presses three independent challenges to the district court's revocation of supervised release and its imposition of a nine-month custodial sentence. Johnson's initial claim is based on the district court's failure to afford Johnson an opportunity to allocute; although the district court addressed Johnson on one occasion prior to imposition of sentence, it failed to unequivocally establish Johnson's right to make a statement in mitigation of any sentence imposed. Had the district court respected Johnson's right of allocution, it is plausible on the present record that the court may have imposed a lesser sentence. Under this Court's precedents, Johnson is thus entitled to resentencing.

Next, Johnson submits that the district court's consideration of irrelevant and prejudicial testimony concerning an incident which was not set forth in the Petition and which allegedly occurred subsequent to the Petition's filing deprived Johnson of notice and an adequate opportunity to challenge the Probation Officer's testimony. Because the prejudicial and irrelevant testimony concerning Johnson allegedly entering a vehicle driven by a convicted felon taints the relatively lengthy custodial sentence imposed below, the district court's judgment cannot stand.

Finally, although Johnson does not here attack the substantive reasonableness of the district court's sentence, the

10

procedure utilized by the district court was deficient and adversely impacted Johnson's sentence. In particular, and contrary to binding precedent, the district court failed to consider the relevant sentencing factors of 18 U.S.C. § 3553(a). Accordingly, this Court should vacate the district court's judgment and sentence and remand for resentencing.

<u>**ARGUMENT**</u>

I.    Did the district court err in failing to afford
      Appellant Johnson an opportunity to allocute?

<u>Standard of Review</u>:

A decision to revoke supervised release and impose incarceration is normally reviewed for abuse of discretion. <u>See</u> <u>United States v. Davis</u>, 53 F.3d 638, 642-43 (4th Cir. 1995). However, where the claimed error was not raised below, as in this case, the claim is reviewed for plain error. <u>See</u> Fed. R. Crim. P. 52(b); <u>United States v. Muhammad</u>, 478 F.3d 247, 249 (4th Cir. 2007). To establish plain error, Johnson must show that an error occurred, that the error was plain, and that the error affected his substantial rights. <u>Muhammad</u>, 478 F.3d at 249 (citing <u>United States v. Olano</u>, 507 U.S. 725, 731-32, 113 S. Ct. 1770 (1993)). If these grounds are met, a reviewing court may notice and correct the error if allowing the error to stand would seriously affect the fairness, integrity, or public reputation of judicial proceedings. <u>Olano</u>, 507 U.S. at 736-37.

11

Argument:

Just as a defendant has a right to allocute prior to the imposition of sentence following conviction by guilty plea or trial, see Fed. R. Crim. P. 32(i)(4)(A)(ii); United States v. Cole, 27 F.3d 996, 998 (4th Cir. 1994), the Federal Rules of Criminal Procedure and circuit court precedent make clear that the same right of allocution applies at sentencing for violation of the conditions of supervised release. See Fed. R. Crim. P. 32.1(b)(2)(E) (providing that the defendant is entitled to "an opportunity to make a statement and present any information in mitigation"); United States v. Magwood, 445 F.3d 826, 828-29 (5th Cir. 2006); see also United States v. Steinert, 470 F. Supp. 2d 627, 630-32 (E.D. Va. 2007) (explaining leading precedents on this issue). To satisfy its obligation of providing a defendant with his or her right of allocution, the district court "must communicate 'unequivocally' that the defendant has a right to allocute." Magwood, 445 F.3d at 829 (quoting United States v. Echegollen-Barrueta, 195 F.3d 786, 790 (5th Cir. 1990)). "At a minimum, the court, the prosecutor, and the defendant must 'interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence.'" Steinert, 470 F. Supp. 2d at 631 (quoting Magwood, 445 F.3d at 829).

With respect, no such inference can be drawn on the basis of the present record. The district court admittedly addressed

12

Johnson, but it skirted the Rule's requirements by failing to make clear that it was Johnson's "opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(E). On the sole occasion it directly addressed Johnson, the court prefaced its question to him with the observation that "I'm sure you have faced a dozen or more judges in the past and told them it would never happen again." (JA 91.) It was at this point that the court asked Johnson: "Is there something new or different that you want to tell me?" (JA 91.)

As an initial matter, the basis of Judge Messitte's prefatory comment is curious, as he had no involvement in Johnson's criminal case or in any prior sentencing of Johnson. More significantly, the court's prefatory remark strongly implied that anything other than some exceptionally insightful or moving communication by Johnson would have no beneficial impact on the sentence and that Johnson should thus think twice before making a statement. Contrary to the district court's implication, regardless of whether *what* Johnson would say would make any difference to the ultimate sentence, it was *his* opportunity to make a statement. And even something that Johnson may have considered unexceptional might, coming from Johnson, have made a difference in the ultimate sentence imposed. See, e.g., Green v. United States, 365 U.S. 301, 304 (1961) ("The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."). At no point

13

did the district court unequivocally express to Johnson that it was his right to make a statement in mitigation of sentence, or that he had the opportunity to make whatever statement he felt appropriate.

Consequently, the district court erred in not affording Johnson an opportunity to allocute. In light of the textual mandate of Rule 32.1(b)(2)(E) and precedent recognizing a defendant's right to allocute in materially identical circumstances, the court's error is plain under existing law. See, e.g., Cole, 27 F.3d at 998. That leaves the third and fourth prongs of the plain-error standard for determination.

Because the denial of allocution is not prejudicial *per se*, "an appellate court must 'examine each case to determine whether the error was prejudicial.'" Steinert, 470 F. Supp. 2d at 631 (quoting Cole, 27 F.3d at 999). Under Fourth Circuit precedent, "[w]here a defendant does not receive the minimum sentence possible under the circumstances after being denied allocution, prejudice is shown if a reviewing court can identify any grounds on which a lesser sentence might have been imposed." Steinert, 470 F. Supp. 2d at 631 (citing Cole, 27 F.3d at 999). Just as was the case in Cole, Muhammad, and Steinert, such grounds are readily discernible here. Johnson's supervised release was revoked on the basis of four Grade C violations, two of which concerned failure to submit to GPS monitoring and two of which concerned his living arrangements and alleged related failure to

14

reside at the location approved by Probation.  As to the GPS-related violations, it is undisputed that Johnson was compliant with the GPS-monitoring condition for approximately a year—from the date of his release in February 2012 until the transfer of his case back to the Eastern District of Virginia in or about March 2013.  (E.g., JA 50-51.)  Similarly, there exists some record evidence that technological or other factors beyond Johnson's control contributed, at least in part, to Johnson's noncompliance with the GPS monitoring requirement.  (E.g., JA 69-70.)

Moreover, comments by Judge Messitte himself underscore that the evidence as to the latter two charges concerning Johnson's living arrangements was less than compelling, for at least two reasons. First, virtually all of the Government's evidence that Johnson failed to reside at the location approved by Probation was grounded on Johnson's frequent visits to his infant child, a fact which was not prohibited by the terms of Johnson's supervised release and which, in any case, was hardly something for which Johnson should have been penalized.  Second, regardless of whether Johnson occasionally spent nights at the location where his child and the child's mother resided, Smihal's testimony was equivocal at best on the question whether Johnson failed to reside at the location where at least some of his belongings were kept and which had been approved by Probation. While Judge Messitte at least tacitly acknowledged these

15

deficiencies in the Government's evidence, see, e.g., JA 82-84, it is at least plausible that these grounds may have led to a lesser sentence had Johnson been given the opportunity to speak on them.  See Cole, 27 F.3d at 999; Muhammad, 478 F.3d at 250-51. "As long as this possibility remained, [this Court] is unable to say that [Johnson] was not prejudiced by the denial of his right to allocute prior to the imposition of sentence."  Id.

The fourth prong of the Olano plain error standard is also satisfied as "precedent is squarely on point."  Steinert, 470 F. Supp. 2d at 632.  "In this circuit, when a defendant is denied allocution 'and the possibility remains that an exercise of the right of allocution could have led to a sentence less than that received, [the] fairness and integrity of the court proceedings would be brought into serious disrepute were we to allow the sentence to stand.'"  Id. (quoting Cole, 27 F.3d at 999); accord Muhammad, 478 F.3d at 251.  Consequently, this Court should vacate Johnson's sentence and remand for resentencing.

16

II.  Did the district court err when it received
     evidence unrelated to the allegations set forth in
     the Petition on Supervised Release?

Standard of Review:

To revoke supervised release, a district court need only
find a violation of a condition of supervised release by a
preponderance of the evidence, see 18 U.S.C. § 3583(e)(3); United
States v. Copley, 978 F.2d 829, 831 (4th Cir. 1992), and a
district court's decision to revoke supervised release is
normally reviewed for abuse of discretion.  United States v.
Pregent, 190 F.3d 279, 282 (4th Cir. 1999).  However, the
district court's legal determinations in the sentencing context
are reviewed de novo.  E.g., United States v. Moore, 666 F.3d
313, 320 (4th Cir. 2012.).  A trial court's decision to admit
evidence at a revocation proceeding is reviewed for abuse of
discretion.  United States v. Doswell, 670 F.3d 526, 529 (4th
Cir. 2012).

Argument:

In light of Johnson's concessions at the revocation
proceeding, there is no question that sufficient evidence existed
to support the district court's finding that Johnson violated two
of the conditions as alleged in the Petition on Supervised
Release.  And although the inferences which could be drawn from
evidence pertaining to the remaining two allegations which were
in issue were hotly contested before the district court, Johnson

17

further concedes that sufficient evidence exists to support the district court's preponderance-of-the-evidence determination that he committed violations as alleged on those two charges as well. Nonetheless, the district court's factual findings, and more importantly, its overall sentence, were infected by evidence totally unrelated to the allegations set forth in the Petition on Supervised Release. (JA 111-12.)  Consequently, this Court should vacate the lower court's sentence and remand for resentencing.

Before a defendant's term of supervised release is revoked, the defendant is entitled to a revocation hearing in the district court.  Fed. R. Crim. P. 32.1(b)(2).  In connection with that hearing, the defendant is entitled to, *inter alia*, (A) "written notice of the alleged violation;" (B) disclosure of the Government's evidence against him or her; and (C) an opportunity to appear, present evidence, and question witnesses.  Id. at (A)-(C); see also Gagnon v. Scarpelli, 411 U.S. 778, 782, 93. S. Ct. 1756 (1973) (holding that due process requires adequate notice in a proceeding to revoke probation); Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S. Ct. 2593 (1972) (explaining that parolee confronted with revocation of parole must be afforded notice and fair opportunity to be heard); United States v. Chatelain, 360 F.3d 114, 121 (2d Cir. 2004) ("Due process requires, *inter alia*, that a defendant charged with violating a condition of supervised release be afforded notice of the charges against him before the court may revoke his supervised release.").

18

In the case *sub judice*, the Petition on Supervised Release—setting forth five distinct alleged violations of the terms of Johnson's supervised release—was approved by Judge Messitte on May 3, 2013, and docketed in the district court on May 6, 2013. (JA 111-12.) However, at the final revocation hearing in late August 2013, the district court received testimony from Senior U.S. Probation Officer Jeffrey Smihal (of the Eastern District of Virginia), unsworn representations from U.S. Probation Officer Ginger Miller (of the District of Maryland), and argument from counsel concerning an incident which occurred immediately after the conclusion of an interim hearing held on August 9, 2013, several months subsequent to the filing of the Petition. (JA 78-79, 88.) As noted above, the incident, as set out in a status report filed on the same date as its alleged occurrence, concerned Smihal's observation of Johnson getting into a vehicle which investigation revealed was registered to a convicted felon. (JA 36.) Although Johnson's counsel vigorously contested the admission of evidence concerning this matter, the district court rebuffed those objections. (JA 78-80.)

The district court's foray into this subject, even against the wishes of the prosecuting AUSA, <u>see</u> JA 79, was error. Johnson's counsel not only contested whether the matter was properly before the court but also the accuracy of the inference Smihal drew from what he purportedly observed. In this regard, counsel explained that "[t]he person who the vehicle was

19

registered to was not the person driving the car" when that individual picked Johnson up following the August 9, 2013 hearing.  (JA 80.)  Nonetheless, absent notice that the court would delve into that issue at the revocation hearing, counsel was left with nothing in his evidentiary quiver other than his own argument to the court.

In sum, the alleged incident of August 9 was unrelated to the allegations set forth in the Petition, nor—as it occurred months subsequent to the filing of the Petition—can the admission of evidence related to the incident be justified as "historical" background information shedding light on the claims set out in the Petition.  (JA 78.)  The district court's determination that it could consider such evidence in making its factual findings and in imposing sentence constitutes legal error prejudicial to Johnson.  Indeed, even if the issue is framed as an admission-of-evidence question triggering analysis under the forgiving lens of abuse-of-discretion review, the district court plainly abused its discretion by wading into an area so unrelated to the claims contained in the Petition and for which Johnson,  prior to his appearance at the final hearing, lacked notice as a matter in controversy.  The fact that the district court indisputably had supportable grounds showing one or more violations of Johnson's supervised release terms does not render the district court's error as harmless.  See Doswell, 670 F.3d at 531; United States v. Curbelo, 343 F.3d 273, 278 (4th Cir. 2003) (explaining the

20

harmless error test for claims of non-constitutional error as whether the error had a "substantial and injurious effect or influence" on the result).  Because the district court weighed evidence of the unrelated November 9 incident in the determination of its factual findings and in rendering sentence, this Court should vacate the sentence imposed below and remand for resentencing.

III. Did the district court procedurally err in sentencing Appellant Johnson?

Standard of Review:

This Court reviews whether sentences imposed upon revocation of supervised release are within the prescribed statutory range and are not "plainly unreasonable."  United States v. Thompson, 595 F.3d 544, 546 (4th Cir. 2009); United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006).  Where a defendant requests a sentence outside the range as calculated by the district court, the defendant preserves his objections to the district court's sentence, triggering review on appeal under the "plainly unreasonable" standard.  Id.

Argument:

There is no question that the district court's sentence fell within the prescribed statutory range, and the issue is thus whether the district court's sentence fails the "plainly unreasonable" standard.  See Crudup, 461 F.3d at 439-40. Recognizing the "broad discretion" a district court possesses to

21

revoke supervised release "and impose a sentence up to the statutory maximum," Johnson does not here challenge the substantive reasonableness of the lower court's nine month sentence. Id. at 440 (quoting United States v. Lewis, 424 F.3d 239, 244 (2d Cir. 2005)). Rather, Johnson's challenge is directed to the procedure utilized by the district court in imposing sentence.

In this regard, a close review of the sentencing transcript indicates that the lower court's sentence is, as a procedural matter, plainly unreasonable under this Court's precedents. To determine whether the sentence in question is plainly unreasonable, it is first necessary to determine whether the sentence is unreasonable. See Thompson, 595 F.3d at 546; Crudup, 461 F.3d at 438. Notwithstanding the "broad discretion" a district court retains to impose a particular sentence, "[t]hat discretion has some limits." Thompson, 595 F.3d at 547. And although the policy statements governing revocation proceedings in the Sentencing Guidelines Manual are non-binding, this Court has held that a district court "must consider the Chapter Seven policy statements and other statutory provisions" applicable to a defendant's sentence. Id. Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must adequately explain the chosen sentence and its basis. Id.

Here, the district court never referenced the primary sentencing statute, 18 U.S.C. § 3553(a), and with the possible

22

exception of the penological aim of deterrence, it failed to address the § 3553(a) factors which 18 U.S.C. § 3583(e) requires the district court to consider when imposing sentence in a revocation proceeding.  See § 3583(e) (indicating district courts should consider factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), when imposing sentence in revocation proceedings; § 3553(a)(2)(B) (providing need to "to afford adequate deterrence to criminal conduct" as one of the factors for consideration at sentencing); JA at 93.)  To be sure, the transcript of the final sentencing hearing reveals some reference to the purported Guidelines range; however, it was the prosecuting AUSA—not the district court—who stated that the applicable Guidelines range was six to twelve months confinement.  (JA 85.)  The district court made no findings as to the appropriate Guidelines range, and to the extent the district court mentioned the Guidelines, it did so only in response to the objection of Johnson's attorney to the proposed sentence floated by the court. (JA 93 (indicating in response to Johnson's attorney that "nine months is right in the middle of the recommended range").)  In sum, the district court's failure to address the sentencing factors of § 3553(a) and its concomitant failure to make findings as to the appropriate Guidelines range render the district court's sentence procedurally suspect.  Moreover, the procedural requirements which the district court failed to follow were clearly settled,

23

even in the revocation context, at the time of Johnson's final hearing in August 2013. See Thompson, 595 F.3d at 548. In other words, the district court's sentence was plainly unreasonable.

On the present record, this Court cannot be sure that the district court's error was harmless. "For a procedural error to be harmless, the government must prove that the error did not have a substantial and injurious effect or influence on the result." Id. (internal quotation marks & citation omitted). As noted in Johnson's first enumeration of error, the evidence as to the claims that Johnson failed to maintain a stable living arrangement and failed to reside in accordance with the plan approved by Probation was less than compelling, and in any case, certainly not indicative of a lengthy prison term. (JA 82-85.) By the same token, the record indicates that Johnson satisfied the GPS monitoring requirements for a year prior to the time his case was transferred back to the Eastern District of Virginia, at which time he experienced at least some technological and other difficulties beyond his control. (JA 50, 69-70.) Had the district court explicitly considered these facts in light of the appropriate sentencing factors, "it could conceivably have given [Johnson] a lower sentence." Thompson, 595 F.3d at 548. Accordingly, this Court should vacate the district court's sentence and remand for resentencing.

24

## CONCLUSION

Johnson challenges the district court's revocation of supervised release and the nine-month custodial sentence which the district court imposed at the final revocation hearing held in late August 2013. Three independent grounds support Johnson's attack on the district court's judgment. First, although the district court addressed Johnson on one occasion prior to sentencing, it failed to unequivocally make clear Johnson's right to allocute in mitigation of any sentence imposed. Second, the district court impermissibly considered irrelevant and prejudicial testimony and argument concerning an incident unrelated to the alleged violations set out in the Petition and which allegedly occurred subsequent to the filing of the Petition, depriving Johnson of notice and an opportunity to challenge the Probation Officer's testimony with independent evidence. Finally, the district court erred procedurally by failing to consider the mandated sentencing factors of § 3553(a). All three errors taint the district court's judgment and sentence. Accordingly, Johnson prays that this Court vacate the lower court's judgment and remand for resentencing.

## **ORAL ARGUMENT**

In late August 2013, the district court sentenced Johnson to nine months confinement.  To expedite resolution of this appeal, and pursuant to Federal Rule of Appellate Procedure 34(a)(3) and this Court's Local Rule 34(a), undersigned counsel suggests that this case be resolved on the briefs and that oral argument need not be scheduled.

Respectfully submitted,

FULCHER HAGLER LLP

/s/ Michael N. Loebl
Michael N. Loebl
One 10th Street, Suite 700
Augusta, GA 30901
Phone:  (706) 724-0171

26

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

1.  This brief contains less than thirty pages and complies with Fed. R. App. P. 32(a)(7)(A).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a monospaced typeface using Microsoft Office Word 2010 with Courier New 12-point font, 10 characters per inch.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the work or line print-out.

/s/ Michael N. Loebl
Michael N. Loebl

27

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of December, 2013, a copy of the foregoing has been served on the following via electronic mail through the United States Court of Appeals for the Fourth Circuit:

```
Kelly O'Connell Hayes
U.S. Attorney's Office
6500 Cherrywood Lane
Suite 200
Greenbelt, MD 20770
```

and the required six true copies of the foregoing have been dispatched to the Clerk of the United States Court of Appeals for the Fourth Circuit by depositing the same in the United States Mail with sufficient postage affixed thereto to ensure delivery, addressed as follows:

```
The Honorable Patricia S. Connor
Clerk, U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219-3517.
```

/s/ Michael N. Loebl
Michael N. Loebl

28